We start with case number 19-3673, USA v. Troy Baker, oral argument not to exceed 15 minutes per side. Mr. Tabelman for the appellant, you may proceed. Thank you very much. If it pleases the court, my name is Kenneth P. Tabelman. I'm appearing here on behalf of Mr. Troy Baker, the appellant. I would like to reserve four minutes for rebuttal, please. That's fine. Thank you. The way I look at this case, there are three problems. They're all interrelated, and they all, I believe, lead to the relief that I'm requesting on behalf of my client, which is that you reverse his conviction on the basis of insufficient evidence. If you don't reverse, then I believe, at the very least, he's entitled to a new trial. Starting from the backwards forward, there is instructional error in this case. This case is a circumstantial possession of drugs case. The charge being possession with intent, two charges of possession with intent to distribute drugs. During the deliberations, the jury asked the court to further define the instruction given on constructive possession. And the court came up with a synonym for the word right and said ability. And as I've indicated in my brief, those are really not synonymous in the context of constructive possession. It indicates that the jury is struggling with the concept of possession. Moving backwards from that, we have the issue of the use of the so-called background evidence. This case started at the very start with a tip from a confidential informant that my client was packaging drugs at this address in Euclid, Ohio. That was the subject of a pretrial motion in Lemonade, which the district court overruled. And the government started off its opening statement by saying, you're going to hear that we got a tip from an informant that the defendant was packaging drugs. The jury struggled with that. The court did give an instruction, a cautionary instruction. But I think in this particular case, in our unique case here, I don't think there's any way that any curative instruction could have prevented the improper use of the information. Essentially, the government was saying, we have a witness outside the courtroom here that's not coming in to testify that's saying that Mr. Baker is possessing drugs at this address. That's what this whole case was all about. Mr. Teitelman, this is Doug Bush. I just wanted to ask you about those instructions. I believe there were two curative instructions, and the second one was given specifically in response to the jury's question as to whether or not the tip could be considered in evidence. And the judge said it could not. So why isn't that enough to cure the error here, if there is an error? Well, the jury's been told that the term has been used, background evidence, and then the jury is told you can't use it as evidence. And we as lawyers may pick up on the nuances of that. I don't think it's realistic to assume that the jury could. And in the unique setting of this particular case, where it's a very thin amount of evidence against my client, I think extra precaution is warranted, and I think the court should have granted the motion limly that danger of unfair prejudice to my client was just simply too great. It's not a case where you can say there's other things that didn't really hurt. I think it really did hurt. So that's my response to your question. So is your limiting principle then what? That where you only have circumstantial evidence of guilt that you can ignore? You can presume that the jury doesn't pay attention to jury instructions in that circumstance? I'm trying to figure out where do you draw the line here? How do you know that the jury does not follow instructions, and when you say it does follow instructions? Well, let's look at the specific evidence that was offered here. It's testimonial. It's somebody else saying he did that which he's charged with. It's different than just saying we got a tip without going into the details of the tip. It's a very specific statement that's being offered, and then the jury's told, well, don't consider this. He's on trial for possessing. Don't consider it. So my theory on this, the limiting principle would be, A, you don't get to put in specifics that go to the heart of the case in your so-called background evidence, because it can be done in a way that avoids any risk whatsoever. You just say, well, we got information from somebody, and we got a search warrant and went to the house. You don't need to get into that, and I've cited cases in my brief, and I know this court has sort of a boilerplate statement in the Hardy case about how background evidence in general can be used, but I think you still have to look at it very carefully in each particular case and sanitize it and limit it. There's no need to even bring that type of danger into the case, and let's think about it. Why is it being offered in the first place? It's not even relevant, but if it's going to be offered, why is it being offered? We want the jury to know that the police didn't just appear out of thin air, but why is that relevant? This was not a case where the defense was police misconduct, police overreaching. That's not it at all. It's just a garden-variety search warrant case. Why can't we just say, we got a tip, we investigated, we got a search warrant? Why do we have to bring in that the witness said he's distributing drugs out of this house? So, Mr. Tableman, that sounds to me like what you would like us to say is that when there's a tip by a confidential informant, I'm sorry, this is Judge Larson, I didn't identify myself, sorry. When there's a tip by a confidential informant that is specific in that it names the defendants or gives specifics about an address, but gives maybe more information that is strictly necessary to sort of set the scene, there is no instruction that can cure that harm? So it's sort of structural per se error? There's nothing a trial court could do to cure that once that comes in? Is that what you're arguing? Well, I think I would go there, yes. I'll agree with you on that. But I think if you analyze it, what is the purpose of the information? If it's being offered as a statement about this is what happened, that's inadmissible hearsay, there's a constitutional problem, there's a structural problem, that's the powers case. You can't bring things in from the guise of background that are improper like that. Counsel, I believe we may have an interruption. Judge Bush, we have Judge Batchelder back on the line. Okay, Judge Batchelder, welcome back. Sorry we dropped you there. I guess we need to have counsel back up a bit and say what you were saying probably a few minutes, or not minutes, but a few seconds before. All right, thank you. I was basically complaining about the danger of using irrelevant information in the guise of so-called background evidence. It's fine, I think, to say that officers got a tip and then they went and did what the officers can testify that they did. But when you start getting into saying the tip said such and such about such and such, that's veering into a confrontation problem, and that's the powers case they cited in my brief. Clearly, in our case, the jury did struggle with that. We're regulating trials, we want to have a fair trial, we want a decision made on a proper basis. I think the court can say it's too dangerous to get into these specific details because there's no real need for them. Why is the government offering it in the first place? To set the stage, I suppose. But setting the stage is not an element of the crime, and it's not relevant. It's just not relevant. So that's my discussion, I guess, of this background issue in response to the court's questions. This is Judge Larson again. Maybe you've said this already, but is it your position that no limiting instruction can cure that kind of harm, at least where the evidence of guilt is not overwhelming? Sure, I'll take that. Yes, I'm happy with that position because this is like the reverberating clang you hear about in other contexts. I think there's some things that come in. Once they come in, how can you cure that? Someone says he did such and such. That's asking an awful lot of ordinary people that are not lawyers to say, okay, we heard it, but we're going to disregard it. So I will make that argument, but I think I don't have to make that argument prevail because it's clearly irrelevant, and it's clearly going into a dangerous area, and the government can get that in. They can get the information in. We got a tip. They don't have to get into the details. What's the purpose of the detail if not to prejudice unfairly the defendant? So I hope that responds to your question, Your Honor. Thank you, Judge. One minute left. And this court says that's not sufficient. So in this particular case, my client is not seen at these premises while it's being surveilled. He's not present when the search warrant is executed, and his DNA is in a mixture on the bags. So that's the thrust of that argument, and I see I'm running out of time here, so I'll look forward to speaking with you again. Thank you, Mr. Tableman. Mr. Cobb? Yes. Good morning. This is the court. Matt Cobb for the government. Let me sort of proceed with my argument the way Mr. Tableman did from sort of the end back to the beginning. The last point regarding sufficiency, there was clearly sufficient evidence in this case. The Beverly case is very clearly distinguishable. In that case, it wasn't the mother's house. There was no evidence that the defendant in that case frequently stayed there. And really, the fact that Mr. Tableman is trying to draw attention to the other people who were at the house, the other people that had access to this space, sort of dovetailed into why the argument that defense counsel made below, which was essentially the same argument that he's making here, it could have been several other people, why it was necessary for the government to introduce the tip and explain how the investigation proceeded the way that it did. In this case, the government tested or obtained DNA samples for the defendant and for his mother. We were unable, frankly we didn't have probable cause, to obtain the DNA samples for the other people who had access to that space. That was a point that defense counsel harked on below. Shouldn't it have been other people? He implied that during his opening statement at 636-38, during Detective Kreischer's cross at 655-66, Detective Buick's cross at 759-61, and during his closing argument at HID 917-918. So, really asking what is a very generic question on how did this investigation begin, and giving a description of that, and then following up with the district court very clearly emphasizing to the jury that that was not substantive evidence, and that it could not consider that as evidence of guilt against Mr. Baker, is proper introductory testimony to tell the jury how and why the investigation proceeded the way that it did, and to explain why it unfolded the way that it did. This is not, as Mr. Chapman had argued, in effect the government would say it had a witness outside the courtroom. The government was very careful in this argument not to do that. During closing argument, and during rebuttal argument, the government in effect gave an additional limiting instruction, in addition to the one that the court gave when this testimony was introduced. I believe that concludes... Mr. Call, this is Judge Bush again. I guess my concern with it is that the government was getting into detail that I'm not sure was really necessary to provide the context, and this is obviously the prejudicial portion. So, first of all, in the motion in limiting, was there any discussion of the government at that point saying it was not going to get into the specifics of the tip? No, I don't believe that there was, Your Honor. I don't believe that... I think we read in detail that proportion of it, but the government noted in its trial brief that it intended to put that tip in. The defendant moved to exclude it under docket item 60, and the court held that it was proper to do it. So, I don't think there was any discussion, contemplation of not getting into the specifics of it, but the specifics were necessary only to show why they focused on Troy Baker, why they obtained the DNA sample from Troy Baker, why they compared the DNA found on the different bags and on the scale to Troy Baker's as opposed to the other 70 brothers and or nephews that had access to that base. And the government was very careful in its closing argument. Page 922, 923, the government specifically reminded the jurors it wasn't evidence of guilt. The government counsel said, quote, the tip should not come into your deliberations at all. And when the jurors asked how much consideration can you give it, the court doubled back on that and reemphasized it. So, if there had been any prejudice, a jury is presumed to follow the instructions it's given. They were getting these instructions during trial. The government stated during its argument that it wasn't attempting to use it as substantive evidence of guilt. And then the court reminded them again during their deliberations. So, how do you equate the Nelson case? I noticed that the government didn't even cite that case in its brief. How do you distinguish Nelson from this case? In the Nelson case, there were five different police officers. So, again, it was sort of hammered home. In our case, you know, it was one officer answering one question, which was, and how did the investigation begin? And there, the officer's state of mind was never put at issue. And here, there were multiple times that the defense was asking, why didn't the government test him? Why didn't the government look at that person? And so, why the investigation proceeded the way that it did was directly relevant. And Nelson officers came up on the defendant. I'm sorry. No, well, Mr. Call, when you give that answer, when you say the SIF is not offered for the truth of the matter asserted, but it's just background evidence, but it was necessary to rebut Baker's defense of misidentification, it sounds like it's being offered for the truth of the matter asserted. Like, that doesn't give me a ton of confidence. Baker's defense was that the investigation should have happened differently, that the investigation was incomplete because it didn't focus on his siblings or other people that had access to the state where the drugs were found. The government never argued that because there was a tip, he is guilty. The government merely used the tip to point out why his DNA was tested as opposed to other people's DNAs. And frankly, we didn't have probable cause to obtain a sample score. So, that would sort of be the distinction, Your Honor. And ultimately... The defense isn't using the tip for the truth of the matter asserted, that in fact, he was packaging drugs. So, his defense is, well, you should have checked other people because I wasn't packaging drugs. And your answer is, well, we have a tip that says he was packaging drugs? If you see how it was argued, however, the government was very careful to state that that's not what we were using it for and that it shouldn't come into the deliberation. The government needed to explain why they tested Troy Baker and that that evidence, his DNA on the bags, was the strongest substantive evidence of his guilt. The government never stepped over the line into arguing that because we had the tip, he was the one that was guilty. It was because we had the tip, that's why we focused on him. And when we searched his house where he stayed, in a room that he had access to, where he had recently been, we found a large cache of drugs. Then we tested those drugs and his DNA was on it. That shows that he is guilty. We never tried to loop the tip into a reason he was guilty. The tip is what got the ball rolling in the investigation and the tip is the explanation for why we had probable cause to get his DNA sample. But the government never attempted to, and in fact, was very careful in both the closing argument and the rebuttal closing, to emphasize to the jury that it was not reliant on the tip. And then Judge Boyko again emphasized that when he instructed them in response to the question. As far as Judge Boyko's response to the other question about the synonym of ability for right, we show in our brief, I believe it's at page 942-943, this isn't just an issue where the defendant fails to object. The defendant agreed to that instruction. Excuse me, 943-944. So any subtle distinction that may exist between ability and right, and we don't really think that there was one. When you look at the jury instructions as a whole, they were adequate and there was no grave miscarriage of justice here. According to the defense's own brief at page ID 31, the definition of ability includes the legal power to do something, which is, in effect, the proper legal description for what we have here. So looking at this, if it's not waived, it's certainly a plain error standard of review. Excuse me. And the instructions were not confusing, misleading, and prejudicial. The instructions were proper as given, and providing that slight difference in the synonym, when you plug that into the instructions in the two places, they were still a fair representation of what the law is for constructive possession. And as we stated, we believe there was clearly sufficient evidence to show constructive possession in this case. The defendant's residence, where he stayed with his mother, he had a key. He was free to come and go as he pleased. He had recently been there. The drugs were found in the area that he was most often stayed. And most importantly, his DNA was the major contributor on the badge and on the scale. And based on that, we believe there was sufficient evidence to hold him accountable for that. If there are no further questions, I would just rely on the remaining arguments in our brief. Thank you very much. Thank you, counsel. Mr. Tabelman. Thank you very much, Governor. I want to spend just a moment more on the tip. Again, there's more prejudice than probative value. And my colleague here was not the trial lawyer in this case. I almost think of this as, you can't use it, wink, wink. You can't use it, wink, wink. It should never have been in there in the first place. There's a difference between saying, as a defendant, you didn't bring in other evidence that may have shown other people's DNA was here, or an argument about other people having access. That's not saying officers fabricated things or had some kind of bias. The state of mind of the officers is not the case. The case is about, did the man possess drugs at a particular time and place? It's not about, did we have probable cause to get a search warrant? It's not about that. I mean, that's a pretrial matter. That's not what the trial is about. The jury's not asked to adjudicate, was the search warrant proper? That's not an issue. There's no need to bring it in then. So, I mean, why is it brought in? Yes, I understand. There's some effort here. But I think it's not effective and wholly and entirely prejudicial to my client. Turning back to the sufficiency of the case, there are many, many cases about sufficiency of the evidence and conflicting rules, as far as I can tell. But it seems to be that just because you're present someplace, you're not automatically assumed to have constructive possession. After all, this is a constructive possession case. So, that he stays there, there's got to be more. There's got to be something showing that he had an intent to exercise dominion over the drugs. And if you look at the different cases that talk about if you live in a residence, you're assumed to have constructive possession. They all are cases where the person is found there with the contraband that's in plain sight or admits that it says. As you move further along, when a person's not even there, in our case, you're left with transfer DNA in a mixture. And no testing of the brothers. I guess it says something that his mom's DNA wasn't found in the mixture. But even the government's own expert said, you know, I can't tell you when the DNA got there. All I can tell you is we swabbed the bags and we found his... There's one minute left. We found some of his DNA in there. And I think that's a very slender read to base a conviction that results in a man going to prison for 200 months. I just don't think there's sufficient evidence in this case. If you look at that NIST article I cited in my brief, I mean, this DNA analysis is taking cells, making copies of them, and testing them and comparing them against the known person. And all we have in this case is someone saying, well, it's on there. It's like the fingerprint on the gun. Okay, it's on there. We don't know how it got on there. We don't know when it got on there. And it's not a case where my guy is there with the stuff in open view. So for those reasons, and the reasons set forth in our brief, we respectfully ask the court to reverse the district court, enter a judgment of acquittal in favor of my client, or failing that to order a new trial. Thank you very much, Charms. Thank you, Mr. Tabelman. And I know that you are a CJS-appointed counsel for Mr. Baker. Thank you for taking the representation. And thank you to the counsel for both sides for an excellent argument. The case will be submitted. The clerk may call the next case.